1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GARNETT LAURENCE DRAKE,           )    1:09-cv-01768 LJO MJS HC
                                  )
                Petitioner,       )    FINDINGS AND RECOMMENDATION
                                  )    REGARDING PETITION FOR WRIT OF
        v.                        )    HABEAS CORPUS
                                  )
DOMINGO URIBE, JR., Warden,       )
                                  )
                Respondent.       )
_____    )

        Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254. Respondent, Domingo Uribe, Jr., as warden of California State
Prison, Centinela, is hereby substituted as the proper named respondent pursuant to Rule
25(d) of the Federal Rules of Civil Procedure. Respondent is represented in this action by
Brook Bennigson, Esq., of the Office of the Attorney General for the State of California.

I.      **PROCEDURAL BACKGROUND**

        Petitioner is currently in the custody of the California Department of Corrections
pursuant to a judgment of the Superior Court of California, County of Kern, following his
August 1, 2007 conviction by jury trial of assault with intent to commit rape. (C.T.[1] at 281-82,
Lodged Doc. 14.) The trial court also found true allegations that Petitioner had suffered prior
serious felony convictions which qualified as "strikes" under California's "Three Strikes" law.

---

[1]"C.T." refers to the Clerk's Transcript on Appeal lodged by Respondent with his response.

1   On August 30, Petitioner was sentenced to serve a term of sixty-one (61) years to life in state

2   prison. (Id.)

3         Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District.

4   On July 8, 2008, the judgment was affirmed in a reasoned opinion, however the court reversed

5   Petitioner's sentence and ordered the trial court to stay the consecutive twenty-five (25) year

6   to life sentence, thereby reducing his sentence to thirty-six years to life. (Lodged Doc. 4.)

7   Petitioner did not petition the California Supreme Court for review.

8         Petitioner proceeded to file collateral post-conviction appeals in the forms of petitions

9   for writ of habeas corpus. On December 22, 2008, the Kern County Superior Court denied his

10  petition in a reasoned opinion. (Lodged Doc. 6.) Petitioner then filed petitions for writ of

11  habeas corpus with the California Court of Appeals, Fifth Appellate District and the California

12  Supreme Court. Both court summarily denied the petitions on March 12, 2009, and September

13  23, 2009, respectively. (Lodged Docs. 8, 10.)

14        On September 28, 2009, Petitioner filed the instant federal habeas petition. (Pet., ECF

15  No. 1.)  Petitioner raised three grounds for relief: (1) that there was insufficient evidence to

16  convict Petitioner of assault with intent to commit rape, (2) the prosecution failed to produce

17  exculpatory evidence in the form of a videotape, and (3) Petitioner's trial counsel was

18  ineffective. (Id. at 9.) Respondent filed an answer on August 18, 2010, and Petitioner filed a

19  traverse on August 30, 2010. (Answer & Traverse, ECF Nos. 19, 23.)

20  **II.    FACTUAL BACKGROUND**[2]

21        On March 5, 2006 at about 4:45 a.m., Jane Doe was working as a
    supervising correctional cook with the Department of Corrections in Tehachapi.[3]
22  Drake was assisting Doe that morning and had worked with her for
    approximately a year and a half.[4]

23        The general layout of the kitchen area includes two offices that are almost
24  completely glass. One office is for prison correctional officers assigned to the

25  _____

26     [2]The factual background is taken from the opinion of the state appellate court and is presumed correct.
    28 U.S.C. § 2254(e)(1).

27     [3] Jane Doe is a pseudonym for the victim.

28     [4] Drake was serving a sentence for rape convictions.

dining room and/or the kitchen. The other is the cooks' office, which is located at the opposite end. This office is three-fourths glass. There are walk-in refrigerators, three six-foot grills, five 80-gallon steam pots, and three rows of ovens.

Outside the main kitchen room is a breezeway which is accessed through two doors. The doors are solid, but have extremely narrow windows about three inches wide and a foot long. Off the breezeway is a very large garbage disposal called a pulper where excess food is disposed. There is also a dishwasher in the pulper room.

On the day in question, Doe was supervising six inmates, including Drake. Drake was in the breezeway preparing carts with milk, juice, lunches, and bread. Doe went out into the breezeway because garbage cans had not been emptied the night before. Doe asked Drake if he could combine the contents of some of the garbage cans and bring three or four into the kitchen. Doe was standing between the cooks' door and the pulper room.

As Doe finished talking to Drake, he grabbed her around her arms and picked her up in a "bear-hug." They were face-to-face. Drake took Doe into the pulper room, going through a maze, and threw her against the block wall. At first, Doe could not think. She was in shock. Drake grabbed Doe's whistle, a personal alarm called a "PAD," and a break-away identification necklace, and threw them away.

Drake pushed Doe against the wall again, took his arm and put it against Doe's chest, and started ripping her pants, shirt, and belt. Drake ripped the buttons off Doe's pants, which were new, but did not succeed in removing Doe's pants. Drake was holding Doe against the wall with his arm.

As Drake grabbed Doe's T-shirt, she hit her head against the wall. Doe explained that this "knocked some sense" into her. She came out of her daze and screamed several times. After the fifth or sixth scream, Drake began to back up through the maze to leave the pulper room. Doe heard keys and knew someone was trying to find her. Doe saw her alarm, bent over, and picked it up along with her whistle. After two or three seconds, Doe was able to activate the alarm and four officers came out of the kitchen.

As a result of the attack, Doe had redness and bruising on her left side, left elbow, left wrist, and her tailbone. Investigating officers saw a slice on the inside of Drake's wrist that resembled a "slice" from a razor blade. While searching the area of the attack, investigators found a razor blade from a disposable razor of the same type Drake had in his cell.

Drake testified that he and Doe had an ongoing, consensual relationship for several months and were in the pulper room kissing and talking. Drake stated that Doe stopped kissing him when she thought she heard correctional officers approaching the pulper room. Drake said Doe panicked and told him to leave the pulper room. Drake denied grabbing Doe or slamming her against a wall. Drake explained he did not tear Doe's pants or grab her whistle or personal alarm.

(Lodged Doc. 4 at 3-4.) (footnotes in original.)

///

1   III.    **DISCUSSION**

2           **A.    Jurisdiction**

3           Relief by way of a petition for writ of habeas corpus extends to a person in custody

4   pursuant to the judgment of a state court if the custody is in violation of the Constitution or

5   laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams

6   v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his

7   rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out

8   of the Kern County Superior Court, which is located within the jurisdiction of this court.  28

9   U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

10          **B.    Legal Standard of Review**

11          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

12  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

13  enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484,

14  1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus,

15  it is governed by its provisions.

16          Under AEDPA, an application for a writ of habeas corpus by a person in custody under

17  a judgment of a state court may be granted only for violations of the Constitution or laws of the

18  United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal

19  habeas corpus relief is available for any claim decided on the merits in state court proceedings

20  if the state court's adjudication of the claim:

21              (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established federal law, as
22              determined by the Supreme Court of the United States; or

23              (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
24              State court proceeding.

25  28 U.S.C. § 2254(d).

26              1.      Contrary to or an Unreasonable Application of Federal Law

27          A state court decision is "contrary to" federal law if it "applies a rule that contradicts

28  governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams, 529 U.S. at 405-06.  "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).   A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

> 2.    Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through"

1  presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006).

2  Determining whether a state court's decision resulted from an unreasonable legal or factual

3  conclusion,"does not require that there be an opinion from the state court explaining the state

4  court's reasoning." Harrington, 131 S. Ct. at 784-85. "Where a state court's decision is

5  unaccompanied by an explanation, the habeas petitioner's burden still must be met by

6  showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now

7  holds and reconfirms that § 2254(d) does not require a state court to give reasons before its

8  decision can be deemed to have been 'adjudicated on the merits.'").

9       Harrington instructs that whether the state court decision is reasoned and explained,

10  or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d)

11  is the same: "Under § 2254(d), a habeas court must determine what arguments or theories

12  supported or, as here, could have supported, the state court's decision; then it must ask

13  whether it is possible fairminded jurists could disagree that those arguments or theories are

14  inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong

15  case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.

16  (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves authority to issue the writ in

17  cases where there is no possibility fairminded jurists could disagree that the state court's

18  decision conflicts with this Court's precedents."  Id.  To put it yet another way:

19          As a condition for obtaining habeas corpus relief from a federal court, a
         state prisoner must show that the state court's ruling on the claim being
20         presented in federal court was so lacking in justification that there was an error
         well understood and comprehended in existing law beyond any possibility for
21         fairminded disagreement.

22  Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the

23  principal forum for asserting constitutional challenges to state convictions." Id. at 787.  It

24  follows from this consideration that § 2254(d) "complements the exhaustion requirement and

25  the doctrine of procedural bar to ensure that state proceedings are the central process, not

26  just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes,

27  433 U.S. 72, 90 (1977).

28          3.    Prejudicial Impact of Constitutional Error

1   The prejudicial impact of any constitutional error is assessed by asking whether the

2   error had "a substantial and injurious effect or influence in determining the jury's verdict."

3   Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22

4   (2007) (holding that the Brecht standard applies whether or not the state court recognized the

5   error and reviewed it for harmlessness).  Some constitutional errors, however, do not require

6   that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310

7   (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas

8   petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v.

9   Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do

10  not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d

11  911, 918, n. 7 (2002);  Musalin v. Lamarque, 555 F.3d at 834.

12  **IV.    REVIEW OF PETITION**

13          **A.    Claim One - Sufficiency of the Evidence**

14                 1.    Procedural Bar

15  Petitioner claims that there was insufficient evidence to support his conviction of assault

16  with intent to commit rape because the there was no evidence of incidental conduct by

17  Petitioner to attempt to rape the victim. (Pet. at 26.) In the last reasoned state court decision

18  the Kern County Superior court denied the claim based on In re Lindley. 29 Cal.2d 709, 723

19  (1947). Respondent claims this citation provides an independent and adequate state ground

20  barring federal habeas relief. (Answer at 9-10.) As a general rule, this Court "will not review

21  questions of federal law presented in a habeas petition when the state court's decision rests

22  upon a state-law ground that 'is independent of the federal question and adequate to support

23  the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009); Lee v. Kemna, 534 U.S. 362, 375

24  (2002);  Coleman v. Thompson, 501 U.S. 722, 729 (1991). The burden of proving that

25  California's procedural bars are independent and adequate falls on the Respondent. Bennett

26  v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003). Once the state meets its burden, Petitioner

27  may rebut the bar by "asserting specific factual allegations that demonstrate the inadequacy

28  of the state procedure, including citation to authority demonstrating inconsistent application

1    of the rule." Id. at 586 (further noting that the "ultimate" burden on the issue lies with the state).

2        Petitioner's claim is barred under Lindley. In Lindley, the California Supreme Court held

3    "the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue

4    for consideration" in state habeas proceedings. 29 Cal.2d at 723. In Carter v. Giurbino, the

5    Ninth Circuit determined that the "Lindley rule is not intertwined with federal substantive or

6    procedural law" and, therefore, "Lindley is an independent state ground." 385 F.3d 1194,

7    1197-98 (9th Cir. 2004).

8        To overcome the Lindley procedural bars to federal habeas review, a Petitioner must

9    either show cause and prejudice or demonstrate that the failure to consider the claim will

10   "result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262 (1989)

11   (citations omitted). To show cause, Petitioner must demonstrate an "external impediment"

12   such as "government interference or the unreasonable unavailability of the factual basis for

13   the claim." McCleskey v. Zant, 499 U.S. 467, 497 (1991). Petitioner provides no description

14   of any such "external impediment". (See generally, Pet., Traverse.) Furthermore, Plaintiff does

15   not provide any "citation to authority demonstrating inconsistent application" of Lindley rule as

16   required under Bennett, 322 F.3d at 586. Accordingly, Petitioner's claim is procedurally parred

17   from federal habeas review.

18           2.       Merits of Sufficiency Claim

19        Even if Petitioner's claim was not procedurally barred from review, Petitioner's claim

20   lacks merit. Petitioner asserts that there was not sufficient evidence to prove assault with

21   intent to commit rape as there was no evidence of "additional gratuitous violent or sexual

22   acts." (Pet. at 26.)

23           a.       Legal Standard - Sufficiency of the Evidence

24        When a challenge is brought alleging insufficient evidence, federal habeas corpus relief

25   is available if it is found that upon the record evidence adduced at trial, viewed in the light most

26   favorable to the prosecution, no rational trier of fact could have found "the essential elements

27   of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319

28   (1979). Jackson established a two-step inquiry for considering a challenge to a conviction

1   based on sufficiency of the evidence. <u>United States v. Nevils</u>, 598 F.3d 1158, 1164 (9th Cir.

2   2010) (en banc). First, the court considers the evidence at trial in the light most favorable to

3   the prosecution. <u>Id.</u>, citing <u>Jackson</u>, 443 U.S. at 319. "'[W]hen faced with a record of historical

4   facts that supports conflicting inferences," a reviewing court 'must presume - even if it does

5   not  affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor

6   of the prosecution, and must defer to that resolution.'" <u>Id.</u>, quoting <u>Jackson</u>, 443 U.S. at 326,

7   99 S.Ct. 2781.

8        "Second, after viewing the evidence in the light most favorable to the prosecution, a

9   reviewing court must determine whether this evidence, so viewed is adequate to allow '**any**

10  rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"

11  <u>Id.</u>, quoting <u>Jackson</u>, 443 U.S. at 319 (emphasis in original). "At this second step, we must

12  reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all

13  rational fact finders would have to conclude that the evidence of guilt fails to establish every

14  element of the crime beyond a reasonable doubt." <u>Id.</u>

15       Superimposed on these already stringent insufficiency standards is the AEDPA

16  requirement that even if a federal court were to initially find on its own that no reasonable jury

17  should have arrived at its conclusion, the federal court must also determine that the state

18  appellate court not have affirmed the verdict under the <u>Jackson</u> standard in the absence of an

19  unreasonable determination. <u>Juan H. v. Allen</u>, 408 F.3d 1262 (9th Cir. 2005); <u>see</u> <u>also</u> <u>Boyer</u>

20  <u>v. Belleque</u>, 659 F.3d 957, 964 (9th Cir. 2011) ("Thus, when we assess a sufficiency of

21  evidence challenge in the case of a state prisoner seeking federal habeas corpus relief subject

22  to the strictures of AEDPA, there is a double dose of deference that can rarely be

23  surmounted.")

24                    b.    Relevant State Court Decision

25       On Petitioner's collateral appeal, the Kern County Superior Court denied Petitioner's

26  claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's

27  petition for review. Based on the "look-though" doctrine of <u>Ylst v. Nunnemaker</u>, the Kern

28  County Superior Court decision is considered to be adopted by the California Supreme Court

and the operative state court decision for this claim. 501 U.S. at 803. In the decision the state

court found substantial evidence of Petitioner committing an assault with intent to commit rape:

> Petitioner first contends that there was insufficient evidence to uphold the conviction for assault with intent to commit rape. He contends that at most, he should be found guilty of assault. The court notes that the following facts state otherwise as gleaned from the appellate court opinion. On March 5, 2006, petitioner was an inmate at California Correctional Institute in Tehachapi California. He was under the supervision of Jane Doe in the kitchen. Jane Doe directed petitioner to consolidate the garbage within three buckets. She accompanied him out to the breezeway, where he forcibly picked her up in a bear hug, and took her over to the pulper, a small enclosure where disposal of food occurs. He slammed her up against the wall dazing her; he threw her personal alarm and whistle away. He fondled her, ripping off her buttons attempting to pull her pants down. Petitioner recovered from momentary daze and screamed until officers came from the kitchen area. Petitioner's defense was that the conduct was consensual, however, the jury found otherwise. As noted by the appellate court, the screams by Jane Doe belie any consensual sexual conduct. The aforesaid facts are sufficient to establish the elements of assault with intent to commit rape.

(Lodged Doc. 6 at 1-2.)

### 3.   Argument and Analysis

Petitioner asserts that there was not sufficient evidence to prove assault with intent to commit rape as there was no evidence of "additional gratuitous violent or sexual acts." (Pet. at 26.) Petitioner refers to several California cases including People v. Griffin, 33 Cal. 4th 1015, 1029 (2004). In Griffin, the California Supreme Court held that force, as an element of rape, was determined by the commonly used and understood meaning, and that the defendant's use of force to pin the victim's arms to the floor was sufficient to support a conviction of forcible rape. (Id.) In Petitioner's case, he moved the victim to a less visible area and then attempted to remove her clothing with a degree of force to rip off buttons from the clothing. Such a use of force is sufficient to support the conviction.

The Fifth District Court of Appeal reviewed the facts of the case, including Petitioner's forcible movement of the victim, and attempts to fondle the victim and rip off her clothing. (Lodged Doc. 6 at 1-2.) Based on the evidence before the court it found that it was sufficient to support a showing of assault with intent to commit rape. This Court agrees. Upon review, the Court must view the evidence in a light most favorable to the prosecution, and presume that any conflicting facts or inferences will be resolved in favor of the prosecution. Jackson,

1  443 U.S. at 326. Accordingly, the inference that Petitioner used force, despite his assertion

2  that the conduct was consensual, must be resolved in favor of the prosecution.

3        Viewing the evidence in the light most favorable to the prosecution, and for the reasons

4  expressed by the state appellate court, there was sufficient evidence introduced at Petitioner's

5  trial to support the jury's verdict of assault with intent to commit rape. The conclusion of the

6  state court that sufficient evidence supported the guilty verdict in this case is not contrary or

7  an unreasonable application of United States Supreme Court authority. Accordingly, Petitioner

8  is not entitled to relief on this claim.

9            **B.    Claim Two - Withholding Exculpatory Evidence**

10        In his next claim, Petitioner alleges that he was denied due process when the

11 prosecutor failed to turn over exculpatory videotape evidence despite stipulating to do so. (Pet.

12 at 45.) Petitioner claims that state court improperly denied the claim by assuming that the

13 prosecution complied with the discovery request and produced the relevant exculpatory

14 evidence in its possession. (Id. at 47.)

15        Due process requires that the prosecution disclose exculpatory evidence within its

16 possession. Brady v. Maryland, 373 U.S. 83, 87 (1963); Towery v. Schriro, 641 F.3d 300, 309

17 (9th Cir. 2010). There are three components of a Brady violation: "[1] [t]he evidence at issue

18 must be favorable to the accused, either because it is exculpatory, or because it is

19 impeaching; [2] that evidence must have been suppressed by the State, either willfully or

20 inadvertently; and [3] prejudice must have ensued." Towery, 641 F.3d at 309 (citing Banks v.

21 Dretke, 540 U.S. 668, 691 (2004)). A failure to preserve evidence violates a defendant's right

22 to due process if the unavailable evidence possessed "exculpatory value that was apparent

23 before the evidence was destroyed, and be of such a nature that the defendant would be

24 unable to obtain comparable evidence by other reasonably available means." United States

25 v. Drake, 543 F.3d 1080, 1089 (9th Cir. 2008) (citing California v. Trombetta, 467 U.S. 479,

26 489 (1984)). A defendant must also demonstrate that the police acted in bad faith in failing to

27 preserve the potentially useful evidence. Arizona v. Youngblood, 488 U.S. 51, 58 (1988);

28 United States v. Toro-Barboza, 673 F.3d 1136, 1149 (9th Cir. 2012). The presence or

absence of bad faith turns on the government's knowledge of the apparent exculpatory value

of the evidence at the time it was lost or destroyed. Youngblood, 488 U.S. at 56-57 n.*. "The

mere failure to preserve evidence which could have been subjected to tests which might have

exonerated the defendant does not constitute a due process violation." Phillips v. Woodford,

267 F.3d 966, 987 (9th Cir. 2001) (quoting United States v. Hernandez, 109 F.3d 1450, 1455

(9th Cir. 1997). See also Youngblood, 488 U.S. at 57.

Petitioner's Brady claim is directed to evidence in the form of the video from

surveillance cameras that Petitioner alleges would show that he and the victim had a

consensual relationship for over a year and a half and that the alleged incident was also

consensual. (Pet. at 45-51.)

### 1.    Relevant State Court Decision

On Petitioner's collateral appeal, the Kern County Superior Court denied Petitioner's

claim in the operative state court decision for this claim. Ylst v. Nunnemaker, 501 U.S. at 803.

In the decision, the state court found that Petitioner's Brady claim lacked merit:

> Petitioner's next contention is that he was denied due process and a fair
> trial as a result of the prosecution's failure to comply with a discovery order to
> turn over a videotape. Failure to turn over exculpatory evidence is reversible
> error. Brady v. Md. (1963) 373 U.S. 83. Petitioner provides no evidence of
> noncompliance with the discovery order. Defense counsel filed a motion to
> compel discovery on September 6, 2006 requesting photographs and
> videotapes among other potential evidentiary items. On October 20, 2006, there
> was a stipulation between defense counsel and the People that the People
> would turn over discovery within two weeks. There were no further motions to
> compel discovery or for imposition of sanctions for failure to comply with an
> order as provided for under P.C. Section 1054.5(b). Without countervailing
> evidence by petitioner, the court can only assume that the prosecution complied
> with the discovery order. Additionally, the trial exhibit list does not include any
> videotapes. The exhibits consisted of photos and diagrams of the scene
> between the breezeway, kitchen and pulp room, July 30, 2007. Petitioner fails
> to state a claim for relief under this second contention. People v. Romero (1994)
> 8 Cal.4th 728, 737.

(Lodged Doc. 6 at 2.)

### 2.    Argument and Analysis

Petitioner asserts that an exculpatory video tape exists, but does not provide facts to

support the assertion. Further review of the procedural history of Petitioner's trial show that

defense counsel specifically requested the videotapes, and defense counsel filed a motion to

1    continue the trial to allow more time to attempt to obtain the tapes. (Lodged Doc. 14 at 113.)

2          On September 14, 2006, Petitioner's trial attorney made an informal request for

3    discovery requesting, among other things, all exculpatory evidence, all real evidence, and all

4    videotapes shown to witnesses. (Lodged Doc. 14 at 82-84.)   On October 2, 2006, Petitioner

5    filed a motion to compel discovery in which he stated he was 'informed and believe[d] that

6    there are at least 3 separate video surveillance cameras in the area that the alleged assault

7    took place and they are critical and potentially exculpatory." (Id. at 74-79.) On October 3, 2006,

8    the prosecutor responded with little objection to Petitioner's motion to compel. (Id. at 87-89.)

9          On October 20, 2006, the parties entered into a stipulation, signed by the court, in

10   which the prosecutor specifically agreed to provide to Petitioner, "All photographs, videotapes,

11   motion pictures, including any surveillance tapes, or recordings maintained by the Department

12   of Correction, from surveillance cameras in the area of the alleged incident." (Lodged Doc. 14

13   at 101.) On January 16, 2007, Petitioner's attorney filed a motion to continue the trial in which

14   he stated that he needed a continuance because, "there has been conflicting information

15   received from the personnel at CCI regarding availability of security camera recordings from

16   the day of the incident that necessitate additional time for defense counsel to act upon and

17   conduct further discovery." (Id. at 14 at 113.)

18         As described by the state court, the prosecution stipulated to disclose relevant

19   evidence, including videotapes. After the described discovery exchange, Defense counsel filed

20   no further motions to compel discovery or otherwise complained about the failure of the

21   prosecution to provide the stipulated discovery. Petitioner provides no further evidence that

22   videotapes exist and has made no showing in this Court that the recordings would have

23   provided evidence favorable to the defense. It is also distinctly possible that Petitioner was

24   provided the videotapes in question.

25         His claim that the recordings could have exonerated him is wholly without evidentiary

26   support. Petitioner has failed make a sufficient showing under Brady that favorable or

27   exculpatory evidence existed, or that the evidence was suppressed by the prosecution.  The

28   Court cannot say the decision of the Kern County Superior Court in denying Petitioner's claim

1    that exculpatory evidence was not provided in violation of <u>Brady</u> was "contrary to, or involved

2    an unreasonable application of, clearly established Federal law, as determined   by the

3    Supreme Court of the United States" or was "based on an unreasonable determination of the

4    facts in light of the evidence presented in the State court proceeding." Petitioner is not entitled

5    to relief. 28 U.S.C. § 2254(d).

6          **C.      Claim Three - Ineffective Assistance of Counsel**

7          Petitioner's third claim is that trial counsel was ineffective. Petitioner first presented

8    claims of ineffective assistance of counsel in a habeas petition to the Kings County Superior

9    Court. (Lodged Doc. 6.) In the state petition, Petitioner alleged that counsel was ineffective for

10   failure to hire an investigator, failure to call defense witnesses, failure to adequately

11   communicate with Petitioner, failure to object to witness testimony, and failure to be present

12   at the preliminary hearing or arraignment. (<u>Id.</u>)

13         In the present petition, Petitioner alleges that counsel was ineffective based on his

14   failure to compel production of the allegedly exculpatory videotapes, failure to introduce the

15   videotapes to show that he and the victim were in a consensual relationship, and failure to

16   recall the victim to cross-examine and 'impeach' her regarding having a consensual

17   relationship with Petitioner. (Pet. at 51-52.) Petitioner did not present these arguments in his

18   state petition.

19                1.      <u>Ineffective Assistance of Counsel</u>

20         The law governing ineffective assistance of counsel claims is clearly established for the

21   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Canales v. Roe</u>,

22   151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective

23   assistance of counsel, the Court must consider two factors.  <u>Strickland v. Washington</u>, 466

24   U.S. 668 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must

25   show that counsel's performance was deficient, requiring a showing that counsel made errors

26   so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

27   Amendment. <u>Strickland</u>, 466 U.S. at 687.   The petitioner must show that counsel's

28   representation fell below an objective standard of reasonableness, and must identify counsel's

1  alleged acts or omissions that were not the result of reasonable professional judgment

2  considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344,

3  1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court

4  indulges a strong presumption that counsel's conduct falls within the wide range of reasonable

5  professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington, 131 S. Ct. 770

6  (2011).

7          Second, the petitioner must demonstrate that "there is a reasonable probability that, but

8  for counsel's unprofessional errors, the result ... would have been different," Strickland, 466

9  U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive

10 defendant of a fair trial, one whose result is reliable.  Id. at 687.  The Court must evaluate

11 whether the entire trial was fundamentally unfair or unreliable because of counsel's

12 ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d

13 1456, 1461 (9th Cir. 1994).

14         A court need not determine whether counsel's performance was deficient before

15 examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

16 Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any

17 deficiency that does not result in prejudice must necessarily fail. However, there are certain

18 instances which are legally presumed to result in prejudice, e.g., where there has been an

19 actual or constructive denial of the assistance of counsel or where the State has interfered

20 with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25

21 (1984).

22         As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard

23 for ineffective assistance of counsel in federal habeas is extremely difficult:

24              The pivotal question is whether the state court's application of the
   Strickland standard was unreasonable. This is different from asking whether
25 defense counsel's performance fell below Strickland's standard. Were that the
   inquiry, the analysis would be no different than if, for example, this Court were
26 adjudicating a Strickland claim on direct review of a criminal conviction in a
   United States district court. Under AEDPA, though, it is a necessary premise
27 that the two questions are different. For purposes of § 2254(d)(1), "an
   unreasonable application of federal law is different from an incorrect application
28 of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A

1    state court must be granted a deference and latitude that are not in operation
2    when the case involves review under the Strickland standard itself.

3         A state court's determination that a claim lacks merit precludes federal
     habeas relief so long as "fairminded jurists could disagree" on the correctness
4    of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.
     Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained,
5    "[E]valuating whether a rule application was unreasonable requires considering
     the rule's specificity. The more general the rule, the more leeway courts have in
6    reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an
     unreasonable application of clearly established Federal law for a state court to
7    decline to apply a specific legal rule that has not been squarely established by
     this Court." Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419,
8    173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. 770, 785-86 (2011).

         "It bears repeating that even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops

short of imposing a complete bar on federal court relitigation of claims already rejected in state

proceedings." Id.  "As a condition for obtaining habeas corpus from a federal court, a state

prisoner must show that the state court's ruling on the claim being presented in federal court

was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

         Accordingly, even if Petitioner presents a strong case of ineffective assistance of

counsel,  this Court may only grant relief if no fairminded jurist could agree on the correctness

of the state court decision.

         2.    Analysis

         Here, the state courts did not address Petitioner's claims in denying his claim of

ineffective assistance of counsel. Regardless, as instructed by the Supreme Court in

Harrington, "Under § 2254(d), a habeas court must determine what arguments or theories

supported or, as here, could have supported, the state court's decision; then it must ask

whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of this Court." 131 S. Ct. at 784-85.

Accordingly, the Court shall review Petitioner's claims and determine what arguments could

have supported those claims.

1    Petitioner's first claim of ineffective assistance of counsel is that counsel failed to

2  compel production of the allegedly exculpatory videotapes. (Pet. at 51.) However, as described

3  above, defense counsel took significant actions to attempt to obtain discovery, and even

4  moved to postpone the trial to provide time to obtain the videotapes. It would have been

5  reasonable for the state court to assume that defense counsel obtained the videotapes or

6  became satisfied that the videotapes did not exist or did not provide relevant exculpatory

7  evidence.

8    Petitioner has not shown that defense counsel's actions fell below an objective standard

9  of reasonableness. Defense counsel took significant actions to attempt to obtain evidence in

10 preparation for trial. Based on the victim's testimony that the alleged act was not consensual,

11 it would be reasonable for the state court to conclude that defense counsel was diligent in

12 obtaining discovery, and regardless, that the videotape would not be exculpatory (assuming

13 that defense counsel did not actually obtain the videotape and determine that it was not

14 exculpatory). Petitioner has not shown that defense counsel's conduct was deficient, nor has

15 he shown that he was prejudiced by said conduct. Petitioner's first claim of ineffective

16 assistance of counsel lacks merit.

17   Petitioner's second claim of ineffective assistance of counsel also lacks merit. Petitioner

18 asserts that defense counsel was ineffective for failing to introduce the videotape at trial.

19 Again, for the reasons stated above, defense counsel acted diligently in his attempts to obtain

20 discovery, and his conduct cannot be considered deficient for failing to present evidence that

21 very well was not exculpatory or that in his reasonable judgment would not have effectively

22 impeach the victim's testimony that she was forcibly assaulted by Petitioner.

23   Finally, Petitioner asserts that counsel was deficient for failing to recall and cross-

24 examine the victim regarding Petitioner's assertions that they were in a consensual

25 relationship. In light of the victim's prior testimony that she was forcibly assaulted, including

26 corroborating physical evidence that the victim's whistle, identification badge, and alarm were

27 thrown across the room and her clothes were ripped and disheveled, defense counsel failure

28 to cross-examine here were reasonable in light of the fact that she would very likely deny any

1   assertions of a consensual relationship. Again, Petitioner has not shown that defense

2   counsel's conduct was deficient, nor has he shown that he was prejudiced defense counsel's

3   conduct. The state court's rejection of the claim was neither contrary to nor an unreasonable

4   application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's claim of ineffective

5   assistance of counsel is without merit.

6   **V.      RECOMMENDATION**

7          Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be

8   DENIED with prejudice. It is further recommended that the Clerk of Court be directed to enter

9   judgment.

10         This Findings and Recommendation is submitted to the assigned District Judge,

11  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being

12  served with the Findings and Recommendation, any party may file written objections with the

13  Court and serve a copy on all parties.  Such a document should be captioned "Objections to

14  Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be

15  served and filed within fourteen (14) days after service of the objections.  The parties are

16  advised that failure to file objections within the specified time may waive the right to appeal the

17  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18

19

20  IT IS SO ORDERED.

21  Dated:    June 28, 2012                    /s/ Michael J. Seng
                                            UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26

27

28